FILED

JUL 3 1 2007    VG

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No.  04-19461-B-7 |
| Jose Macias and Nubia Macias, | |
| Debtors. | |
| | |
| Harold Osborne, | Adversary Proc. No. 05-1051 |
| Plaintiff, | DC No. KO-2 |
| v. | |
| Jose Macias, | |
| Defendant. | |

**MEMORANDUM DECISION REGARDING MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of *res judicata* and claim preclusion.

Kevin O'Casey, Esq., appeared on behalf of the debtor/defendant/moving party, Jose Macias.

Plaintiff, Harold Osborne appeared *in propria persona*.

      In this adversary proceeding, *pro se* plaintiff, Harold Osborne ("Osborne") seeks

an order denying the dischargeability of his claim for personal injury and property

damage pursuant to 11 U.S.C. § 523(a)(6).[1]  Osborne's unliquidated unsecured claim, filed in the amount of $500,000, is based on a pending civil lawsuit which Osborne filed against the debtors in the Fresno County Superior Court (the "Claim").  That litigation arose from an automobile accident and subsequent events that transpired in May 2001 (the "Accident").

On March 5, 2007, the court entered a minute order *sua sponte* dismissing the above-referenced adversary proceeding, originally filed against both debtors, Jose Macias and Nubia Macias.  At the same time, the court dismissed a virtually identical adversary proceeding (number 05-1415-B) filed by Osborne against the debtors in a related bankruptcy case (number 05-62425-B), Susana Ceballos and Manuel Gonzalez.  Both complaints were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  Both complaints were dismissed with leave to amend by March 30, 2007.  Thereafter, Osborne filed a first amended complaint, which is the subject of this motion (the "Complaint").  The Complaint was filed only against defendant/debtor Jose Macias.  Subsequently on May 9, 2007, the court ruled that its prior minute order would stand as a final order of dismissal with prejudice as to the defendants, Ceballos and Gonzales, in the related  adversary proceeding.  The court will deem the omission of Nubia Macias from the Complaint filed in this adversary proceeding to constitute a final dismissal of Nubia Macias with prejudice.  The only remaining defendant, Jose Macias, now brings this motion to dismiss the Complaint for failure to state a claim upon which relief can be granted (the "Dismissal Motion").  For reasons explained below, the Dismissal Motion will be granted without further leave to amend.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior to* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

1   The bankruptcy court has jurisdiction over this matter under 28 U.S.C. § 1334 and

2   11 U.S.C. § 523 and General Orders 182 and 330 of the U.S. District Court for the

3   Eastern District of California. This is a core proceeding pursuant to 28 U.S.C.

4   § 157(b)(2)(B) & (O). This memorandum decision contains findings of fact and

5   conclusions of law required by Federal Rule of Civil Procedure 52, made applicable to

6   this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

7   **Factual Background.**

8   The following facts appear from the pleadings and the oral arguments to be

9   essentially undisputed. Hector Gonzales ("Hector") is the brother-in-law of defendant,

10  Jose Macias ("Macias"). On the date of the Accident, Hector was driving a pickup which

11  belonged to Macias. Macias was a passenger in the pickup. The pickup collided with

12  Osborne in his car. Hector drove away from the scene of the Accident with Osborne in

13  pursuit. Hector drove into a dead-end street where he was blocked by Osborne's car. In

14  Hector's attempt to flee, he impacted a tree and Osborne's car several times. Both Hector

15  and Macias then fled on foot. Hector was criminally prosecuted, placed on probation, and

16  ordered to pay restitution to Osborne. Osborne obtained a default civil judgment for

17  damages against Hector in the state court. Osborne also filed a civil action against Mr.

18  and Mrs. Macias, but they filed a chapter 7 bankruptcy petition before that matter could

19  go to trial.

20  The following facts pled in the Complaint are disputed, but the court must view

21  them as undisputed for purposes of this motion under Rule 12(b)(6). According to

22  Osborne's pleadings, Osborne had the right of way at the time of the Accident, and

23  Hector was at fault. Hector was under age, without a license, and driving under the

24  influence of alcohol. Osborne's objective in following Hector in the pickup was "to stop

25  the offending vehicle or, at least, get its license plate license [sic]." Complaint, ¶ 6, 2:18-

26  19. Once Osborne blocked the pickup in the dead-end street, Hector attempted to turn

27  around and "repeatedly rammed Plaintiff's car numerous times at full speed causing

28  further injury . . . ." Complaint, ¶ 6, 2:22-23. Osborne alleges that Macias could have

3

1 turned off the pickup's ignition to prevent Hector from escaping or running into
2 Osborne's car. Osborne further alleges he was left sitting in his car, close to passing out
3 and obviously bleeding as he begged Macias for assistance, and that Macias refused to
4 help and left the scene. As a result of these events, Osborne suffered serious personal
5 injury and damage to his car.

6      The single claim for relief in the Complaint alleges against Macias as follows:

> 7     Defendant MACIAS had the specific intent to wilfully and
> maliciously cause injury to Osborne by *aiding and abetting* in the
> 8     operation of his vehicle with the specific intent to intentionally
> collide his pickup into Osborne's car while intoxicated, by
> 9     repeatedly, intentionally and wilfully *aiding and abetting,* with the
> specific intent to wilfully and maliciously ram the vehicle registered
> 10    in Macias' name into Osborne's car, by specifically, wilfully and
> callously ignoring and refusing Osborne's pleas of assistance and
> 11    instead walking away and fleeing the scene of the accident with the
> specific intentional knowledge that Osborne was in need of
> 12    assistance. (Emphasis added.)

13 Complaint ¶ 12, 4:17-23.

14     At oral argument, it was clarified that Osborne does not contend that Macias
15 intentionally caused Hector to collide with Osborne. Osborne does not contend that
16 Macias directly caused or inflicted any injury to his person or property. Rather, Osborne
17 asks the court to find that Macias is vicariously liable for Hector's conduct and that the
18 debt is nondischargeable under §523(a)(6) on a theory of "aiding and abetting" Hector.
19 In other words, Osborne contends that his Claim is nondischargeable because Macias did
20 not affirmatively prevent Hector from driving the pickup in the first place and because
21 Macias did not affirmatively intervene to stop the pickup and get help for Osborne in the
22 events that occurred during and after the Accident.

23 **Issues.**

24     It is undisputed that Macias was not driving the pickup that struck and injured
25 Osborne. It is also undisputed that Macias did nothing that directly caused the Accident
26 or any injury to Osborne. For purposes of this Dismissal Motion, the court must accept
27 Osborne's contention that Macias is monetarily liable to Osborne under some state law
28 theory and that Osborne is therefore a creditor of this bankruptcy estate. However, this

4

1  court will not determine the amount of Osborne's Claim, only the dischargeabilty of that

2  debt.[2]

3      The only issues presented here are:  (1) Does the Complaint allege facts upon

4  which Osborne's Claim would be nondischargeable under § 523(a)(6); and (2) if not, does

5  it appear that Osborne could amend his Complaint again to allege facts which would

6  make the Claim nondischargeable?

7  **Standard for Dismissing Claim for Failure to State a Claim for Relief.**

8      "On a motion to dismiss for failure to state a claim, the court must presume all

9  factual allegations of the complaint to be true and draw all reasonable inferences in favor

10  of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. Cal. 1987),

11  citing *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), *cert.*

12  *denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986).  *Pro se* complaints are held

13  to "less stringent standards than formal pleadings drafted by lawyers" and can only be

14  dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can

15  prove no set of facts in support of his claim which would entitle him to relief.'"  *Haines v.*

16  *Kerner*, 404 U.S. 519, 520-21 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

17  (1957) (other citation omitted)).  Inasmuch as Osborne proceeds *pro se*, the court will

18  construe the Complaint liberally. *Id.* at 520.

19      This Complaint was filed after the court dismissed the first pleading and gave

20  Osborne very clear instructions, with authority, as to the burden which had to be met in an

24      [2]Osborne's Claim for $500,000 will remain unliquidated unless and until it is estimated

25  by this court under § 502(c), or prosecuted to completion in the state court.  Liquidation of the
    unsecured claim is unnecessary unless the court determines it to be nondischargeable, or unless

26  there are significant assets for the chapter 7 trustee to distribute to unsecured creditors.  On
    September 29, 2005, the trustee filed her final report showing that $3,050.28 were recovered by

27  the trustee.  After payment of administrative expenses, the sum of $2,242.76 was distributed to

28  Osborne on account of his full claim.

1  amended complaint.[3]  Because Osborne is representing himself in this case, the court
2  spent a great amount of time at oral argument trying to explore the allegations and
3  determine what additional facts might be pled.

4  **Legal Analysis.**

5        **Nondischargeability Under § 523(a)(6).**

6        The § 523(a)(6) exception to discharge is based upon four factors.  It applies to any
7  debt for willful and malicious injury by the debtor to another entity or to the property of
8  another entity.  See *Carrillo v. Su (In re Su),* 290 F.3d 1140, 1147 (9th Cir. 2002).

9        **Willful.**

10        The courts have defined the "willful" element to mean that the debtor must have a
11  subjective intent to harm, or the subjective belief that harm is substantially certain.  *Id*. at
12  1144.  The legislature did not intend to impose a "reckless disregard" negligence standard
13  for denial of discharge under § 523(a)(6).  *Id*. at 1145.  The "willful" element is a
14  subjective standard and "correctly focuses on the debtor's state of mind and precludes
15  application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual
16  knowledge that harm to the creditor was substantially certain."  *Id*. at 1146

17        **Malicious.**

18        The "malicious" injury  requirement under § 523(a)(6) is separate from the
19  "willful" factor and has multiple elements.  "A 'malicious' injury involves '(1) a
20  wrongful act, (2) done intentionally [by the debtor], (3) which necessarily causes injury
21  [to the creditor], and (4) is done without just cause or excuse.'"  *Id*. at 1146-47, citations

---

[3]At the hearing, the court gave both Osborne's and Macias' counsel a copy of an unpublished decision issued by Judge Rimel on July 10, 2001, in adversary proceeding number 00-1221 (*Dias v. Cabral*).  In that case, plaintiff alleged that her claim for injuries from an industrial accident should be nondischargeable under § 523(a)(6) because the debtor, her employer, "willfully and maliciously" failed to obtain workers' compensation insurance as required by California Law.  After thoroughly analyzing the "willful and malicious" test, and relevant cases, for claims asserted under § 523(a)(6), Judge Rimel concluded that the debtor, although liable under state law for failure to carry insurance, was still entitled to his discharge.

6

1  omitted.

2  **Direct Injury.**

3      Osborne alleges generally that Macias willfully and maliciously caused personal

4  injury to him and damage to his car.  However, Osborne does not allege any direct act of

5  Macias that caused the injury and damage.  Section 523(a)(6) is limited to injury *caused*

6  *by the debtor*.  Here, Hector was driving the automobile; Hector caused the Accident and

7  resulting injury and damage.  Macias' involvement in the Accident was limited to alleged

8  *"aiding and abetting"* and *failing to prevent* Hector from causing injury to Osborne.

9      Specifically, the Complaint alleges Osborne was a licensed driver in good standing

10  with California Department of Motor Vehicles.  On the date of the Accident, Osborne had

11  the right of way when the pickup owned by Macias and driven by Hector collided with

12  Osborne's car.  The two occupants of the pickup were drinking beer.  Osborne suffered a

13  serious injury as a result of the Accident.  Hector did not stop at the Accident scene and

14  Osborne followed the pickup onto a dead-end street.  Osborne blocked the pickup and

15  Hector attempted to escape by ramming Osborne's car numerous times causing further

16  injury to Osborne's head.  Hector and Macias continued to drink beer as they fled.  Hector

17  had been arrested the month prior for being under the influence all the while for being

18  under the age of 21, driving with a suspended license and having no insurance while

19  driving Macias' pickup.  This is the same pickup used to inflict damage upon Plaintiff

20  and his vehicle in this case.  Osborne alleges "Macias could have turned off the ignition at

21  the original scene of the accident . . . preventing [Hector] from fleeing.  Furthermore,

22  Macias had another chance to turn off the ignition at the Fedora Avenue location while

23  Hector Gonzalez was repeatedly ramming Plaintiff's vehicle."  Complaint ¶ 9, 3:25-28

24  and 4:1.

25

26      The exception to discharge under § 523(a)(6) is aimed at the individual conduct of

27  a debtor.  This is emphasized by its requirement that the offending action be "by the

28  debtor."  The statute is not concerned with liability which is vicariously imposed upon a

1  debtor solely by reason of the intentional and malicious conduct of the debtor's agent,

2  servant, or in this case, driving companion. As the court stated in *Panetta v. Sondergeld*

3  *(In re Sondergeld), 327 B.R. 313, 319 (Bankr. E.D. Mich. 2005), "negligent entrustment

4  . . . clearly do[es] not offer a cognizable basis [for non dischargeability] under Section

5  523(a)(6)."

6       In the case, *Yelton v. Eggers (In re Eggers)*, 51 B.R. 452 (Bankr. Tenn. 1985), the

7  court refused to deny a discharge for a wrongful death judgment against the mother of a

8  minor for the conduct of the minor. In that case it was alleged that the minor son was at

9  fault in a two-car collision caused by the minor's willful and malicious conduct. Mother

10 was liable for the damages under a state law that imputed the son's conduct to the mother

11 because she signed the application that allowed him to obtain a driver's license. The

12 court noted: "Section 523(a)(6) excepts from discharge a willful and malicious injury *by*

13 *the debtor* to another entity. The legislative history accompanying § 523(a)(6) indicates

14 that a debt is nondischargeable only where injury has resulted from some deliberate or

15 intentional act *of the debtor*." *Id.* at 453, emphasis original.

16      In the case of *Thatcher v. Austin (In re Austin)*, 36 B.R. 306 (Bankr. M.D. Tenn.

17 1984), a drunk rock concert patron killed a pedestrian. The pedestrian's next of kin

18 sought a declaration of nondischargeability of a claim against two promoters of the

19 concert who had filed bankruptcy. The court held: (1) the promoters' failure to prevent a

20 minor from consuming beer was not a "willful and malicious" injury, and (2) imputing

21 the concert patron's conduct to the debtors would eliminate the requirement that, to be

22 nondischargeable on grounds of willful and malicious injury, the *debtor's* conduct must

23 be willful. *Id.* at 312.

24      In another case, *Bowse v. Cornell (In re Cornell)*, 42 B.R. 860 (Bankr. E.D. Wash.

25 1984), a seven-year-old child committed arson. The plaintiffs asserted that the child's

26 parents, who filed a chapter 7 petition after the arson, were liable under the state parental

27 liability statute and that their liability should be excepted from discharge under

28 § 523(a)(6). Plaintiffs claimed that their damage was proximately caused by the parents'

8

1    willful negligence; they had permitted a seven-year-old child to have the means and

2    unsupervised opportunity to set fires. Emphasizing that § 523(a)(6) excepts from

3    discharge only willful and malicious injuries inflicted by the debtor, the court concluded

4    that the plaintiffs could not establish a nondischargeable claim absent some willful and

5    malicious act *by the parents*. *Id.* at 864.

6           Here, Osborne confuses Macias' potential monetary liability for the Claim with

7    dischargeability of the Claim. The court need not address the issue of liability because

8    liability can be assumed for purposes of this ruling. Osborne has not alleged any facts to

9    suggest that Macias directly injured Osborne, or that Macias conspired with Hector to

10   willfully and maliciously cause injury to Osborne. After extensive discussions on the

11   record at oral argument, the court is persuaded that the missing element cannot be

12   corrected by another amendment of the Complaint.

13          **Failure to Render Aid.**

14          Osborne's Complaint includes an allegation that Macias failed to render aid to

15   Osborne after the Accident:

16          While at the Fedora Street scene, the vehicle Defendant Macias was in,
            caused additional injury to Plaintiff and his vehicle. By this point of time
17          Plaintiff was close to passing out. However, he noted the driver, Hector
            Gonzalez exited their vehicle. He also noted passenger Macias exiting the
18          vehicle and passing directly in front of Plaintiff. Plaintiff begged him for
            help with his injuries, but Macias just muttered profanity at Plaintiff,
19          flipped him off and left the scene without calling for an ambulance or any
            other civilian help. Plaintiff continued to sit in his vehicle without aid to his
20          obvious bleeding injuries until neighbors finally arrived to his aid.

21   Complaint ¶ 9, 3:16-22.

22          The threshold questions raised in the above paragraph are (1) whether Macias had

23   a duty to "render aid" to Osborne under these circumstances, and (2) whether breach of

24   that duty caused any of Osborne's injuries. Although the alleged failure to render aid did

25   not cause the Accident, arguably, failure to perform some duty to render aid may have

26   exacerbated the injuries. That would be a very difficult matter for Osborne to prove, but

27   the existence of such a duty could survive a Rule 12(b)(6) motion.

28          In one of the few cases under current law where indirect injury was held to be

                                              9

1  nondischargeable, the debtor was found to have a legal duty toward the injured party.  In
2  the case in *Blocker v. Patch (In re Patch)*, 356 B.R. 450 (8th Cir. BAP Minn. 2006), the
3  court held that the debtor's liability arising from the death of her three-year-old son,
4  Dillon, was excepted from discharge for willful and malicious injury.  The night before
5  Dillon's death the debtor's boyfriend, McBride, told debtor that Dillon had fallen and hurt
6  his head.  Debtor noticed a large bruise on Dillon's head and that he was having a
7  difficult time speaking and breathing.  She did not seek medical treatment, but put the
8  child to bed with McBride and she slept on the couch.  The next morning Dillon was
9  dead.  The autopsy showed that the child died from multiple blunt force injuries to his
10  head and that he had suffered acute injuries to almost every part of his body.  The debtor
11  subsequently pled guilty to second-degree manslaughter.

12      The debtor knew that Dillon had been a victim of abuse for an extended period of
13  time.  Yet she continued to leave Dillon with McBride, his abuser, and she purposefully
14  hid the abuse from others by removing Dillon from daycare and speech therapy.  On the
15  night of Dillon's death, she declined to seek medical help when the child obviously
16  needed it.  Debtor argued that her conduct was mere negligence or recklessness and did
17  not meet the standard for willful and malicious injury under § 523(a)(6).  She alleged that
18  she "merely failed to act and, thus, she did not commit an intentional tort." *Id*. at 457.
19  The court disagreed saying that it considered her removal of the child from daycare and
20  speech therapy to hide his ongoing injuries was an *act of commission*, not omission.  In
21  addition, the court noted that it was obvious that the debtor had a *duty to protect Dillon*;
22  ergo, her failure to act did not prevent a finding that she had committed an intentional
23  tort. *Id*.

24      Here, Macias' alleged failure to aid Osborne occurred after the Accident, after the
25  pickup was turned off, and after Hector and Macias had physically left the pickup.
26  Osborne argues, without supporting authority, that Macias had a "statutory duty" under
27  the California vehicle code to give assistance at the scene.  This court is unaware of any
28  such "good samaritan" law in California that would require Macias, a third-party, to do

10

1   anything for Osborne.  Further, Osborne fails to show that Macias was physically capable

2   of giving meaningful aid at the time (Osborne alleges that both Hector and Macias were

3   heavily intoxicated), or that the failure to give such aid *caused any injury to Osborne* or

4   materially exacerbated the injury he had already suffered through Hector's conduct.

5   **Conclusion.**

6         It is important to clarify here that the court does not in any way condone or even

7   minimize the seriousness of Macias' actions as alleged in the Complaint.  The acts as

8   alleged against both Hector and Macias are both morally and socially reprehensible.

9   However, the court cannot rewrite the Bankruptcy Code; only Congress can do that.  The

10  court must apply the Code, specifically § 523(a)(6), as it is written.  It is apparent from

11  the pleadings and discussions with Osborne in court, that the Accident and resulting

12  injury and damage, was caused by Hector, not Macias.  Nothing alleged in the Complaint,

13  nor offered by Osborne at oral argument, even suggests that Macias willfully and

14  maliciously caused injury to Osborne or Osborne's property.

15        The court is persuaded that Osborne can prove no set of facts to show that his

16  Claim against Macias is nondischargeable under § 523(a)(6).  Accordingly, the First

17  Amended Complaint will be dismissed without leave to amend.

18        Dated: July *3/* , 2007

20  W. Richard Lee
21  United States Bankruptcy Judge

11